Stephen BABINEAUX, Plaintiff,

v.

McBROOM RIG BUILDING SERVICE, INC. and North River Insurance Company, Intervenors-Appellees,

v.

READING & BATES DRILLING COMPANY, Defendant-Appellant.

No. 85–4886.

United States Court of Appeals, Fifth Circuit.

Jan. 7, 1987.

Mandate Withheld Feb. 23, 1987.

Cliffe E. Laborde, III, LaBorde & La-Fargue, Dean Anderson Cole, Lafayette, La., for defendant-appellant.

James Huey Gibson, Allen, Gooch, Bourgeois, Breaux & Robison, Arthur I. Robison, Lafayette, La., for North River Ins. Co. and McBroom.

Before GARZA, DAVIS and JONES, Circuit Judges.

W. EUGENE DAVIS, Circuit Judge:

Reading & Bates Drilling Company (Reading & Bates) appeals the dismissal of its counterclaim against McBroom Rig Building Service, Inc. (McBroom) and North River Insurance Company (North River). The district court dismissed the counterclaim on summary judgment, relying on the Louisiana Oilfield Indemnity Act. La.Rev.Stat.Ann. § 9:2780 (West 1986). We affirm.

## I.

This case arises out of injuries sustained by Stephen Babineaux in the course of his employment with McBroom aboard a Reading & Bates fixed platform. After recovering Longshore and Harbor Workers' Compensation Act benefits from McBroom, Babineaux brought the instant tort action against Reading & Bates. McBroom and its insurer, North River, intervened in the lawsuit to recoup the compensation payments previously made to Babineaux. Reading & Bates counterclaimed against McBroom and North River seeking indemnity for any sums Reading & Bates might be required to pay Babineaux. Reading & Bates' indemnity claim is based on language included in the master/service agreement requiring McBroom to indemnify Reading & Bates. That provision required McBroom to "indemnify and defend" Reading & Bates and hold Reading & Bates "harmless from any and all claims ... for or on account of any injury to any person ... even though said injury, death or damage may be or may be alleged to be attributable to negligence or other legal fault of [Reading & Bates]." The contract also required McBroom to procure certain designated insurance policies and that "[e]ach insurance policy secured by [McBroom] shall name [Reading & Bates] as an additional insured...." [1] McBroom complied with the contract and procured a

1. The entire indemnity provision provides:

1. This Agreement shall be a part of each and every contract hereinbefore or hereinafter made between the parties hereto, whether it is specifically incorporated by reference in such contracts or not, and shall take precedence over such contracts to the extent that any provisions in such contracts conflict with the terms and conditions of this Agreement.

2. Contractor agrees to indemnify and defend R & B, and to the extent R & B is obligated to any other person who may be or may be alleged to be responsible, Contractor agrees also to indemnify and defend those persons, and each of them, against and hold it and them harmless from any and all claims, demands, law suits, liabilities, damages, losses and expenses, including court costs and attorney's fees, for or on account of any injury to any person, or any death resulting at any time therefrom, or any damage to any property, which may arise or which may be alleged to have arisen out of or in connection with the performance of such contracts for R & B by Contractor; even though said injury, death or damage may be or may be alleged to be attributable to negligence or other legal fault of R & B or any other persons indemnified hereunder.

3. Contractor agrees to secure insurance having limits and coverage in accordance with Schedule "A", attached hereto and by this reference made a part of this Agreement, to cover the obligations undertaken by Contractor under this Agreement and each such contract, and to furnish R & B with certificates of insurance evidencing such coverage at 2500 Houston Natural Gas Building, Houston, Texas 77002, prior to commencing operations under any such contract. Each insurance policy secured by Contractor shall name R & B as an additional insured and shall contain a suitable waiver of the rights of recovery of Contractor's insurers and underwriters against R & B and its customers. Each certificate of insurance shall be on forms acceptable to R & B,

comprehensive general liability insurance policy from North River which named Reading & Bates as an additional insured.

The district court found that Reading & Bates' counterclaim for indemnity from McBroom was expressly blocked by the Louisiana Oilfield Indemnity Act, better known as the Anti-Indemnity Act. The district court further found that Reading & Bates was not entitled to the benefit of the North River insurance policy McBroom purchased to comply with the service agreement. This appeal followed.

## II.

Reading & Bates argues on appeal that the Anti-Indemnity Act does not invalidate the liability insurance protection afforded to Reading & Bates by North River. Reading & Bates points out that subsection G facially applies only to agreements "arising out of the operations, services, or activities listed in subsection C," such as drilling for oil, gas, water, or minerals.[2] La.Rev.Stat. Ann. § 9:2780(G) (West 1986). Reading & Bates therefore concludes that the Anti-Indemnity Act only bars its indemnity claim predicated on language in the master service agreement with McBroom and has no effect on its rights in the insurance contract with North River. Reading & Bates emphasizes that the Anti-Indemnity Act was passed in order to protect small oilfield contracting companies, not insurance companies. La.Rev.Stat.Ann. § 9:2780(A) (West 1986).

Reading & Bates' argument is not persuasive. Subsection G expressly invalidates *agreements* requiring "additional named insured endorsements or any other form of insurance protection which would frustrate or circumvent the prohibitions of this section." Subsection I expands the Act's coverage to apply to "provisions contained in, collateral to, or affecting agreements ... which are designed to provide indemnity...."[3] The insurance agreement between McBroom and North River is collateral to McBroom's master/service agreement with Reading & Bates. We agree with Judge Hunter's observation in *Aucoin v. Pelham Marine, Inc.*, 593 F.Supp. 770, 775 (W.D.La.1984), that: "Certainly the insurance agreement between South State and Champion is 'collateral to' Champion's contract with Chevron to provide indemnity." Reading & Bates ignores the fact that subection I brings collateral agreements, such as insurance, within the reach of the Anti-Indemnity Act's prohibitions. We are persuaded that it would frustrate the purposes of the Act to allow Reading & Bates to obtain from North River the indemnification it cannot obtain from McBroom.

AFFIRMED.

shall reflect that the insurers and underwriters have waived all rights of recovery against R & B and its customers, and shall provide that such coverage will not be cancelled or materially changed without R & B having been given thirty (30) days prior written notice.

2. Subsection G provides in full as follows:

G. Any provision in any agreement arising out of the operations, services, or activities listed in subsection C of this Section of the Louisiana Revised Statutes of 1950 which requires waivers of subrogation, additional named insured endorsements, or any other form of insurance protection which would frustrate or circumvent the prohibitions of this Section, shall be null and void and of no force and effect.

3. Subsection I provides in full as follows:

I. This Act shall apply to certain provisions contained in, collateral to or affecting agreements in connection with the activities listed in Subsection C which are designed to provide indemnity to the indemnitee for all work performed between the indemnitor and the indemnitee in the future. This specifically includes what is commonly referred to in the oil industry as master or general service agreements or blanket contracts in whatever form and by whatever name. The provisions of this Act shall not apply to a contract providing indemnity to the indemnitee when such contract was executed before the effective date of this Act and which contract governs a specific terminable performance of a specific job or activity listed in subsection C.