520 So.2d 941 (1987)
Steve CANNON, Plaintiff-Appellant,
v.
PENNZOIL CO., et al., Defendants-Appellees.
No. 86-969.
Court of Appeal of Louisiana, Third Circuit.
November 4, 1987.
*942 Poteet & Landry, Walter Landry, Lafayette, for plaintiff-appellee.
Allen, Gooch, Bourgeois, Breaux & Robison, P.C., (St. Paul Bourgeois), Lafayette, Gibbens & Blackwell (John Blackwell and Dennis Stevens), New Iberia, Jeansonne & Briney, (Katherine Loos), Lafayette, Onebane Donohoe, Bernard, Torian, Diaz, McNamara & Abell, (Rebecca Doherty and Roger Ishee), Lafayette, for defendants-appellees.
Before GUIDRY, FORET and YELVERTON, JJ.
GUIDRY, Judge.
This appeal, which arises out of an accident which occurred on May 27, 1982, at the Pennzoil Company (hereinafter Pennzoil) dock in Intracoastal City, Louisiana, can be divided into two distinct parts: (1) the appeals of plaintiff, Steve C. Cannon, and the intervenor, Insurance Company of North America, worker's compensation insurer of Burner Fire Control, Inc., from a judgment rendered June 24, 1986, denying Cannon's claim for damages for the injuries he sustained in the accident; and, (2) the appeal of Pennzoil from a judgment rendered July 14, 1986, in the same suit, which denied its third party demands for defense and/or indemnity from Production Welding, Inc. (hereafter Production), Burner Fire Control, Inc. (hereinafter Burner), and their respective insurers, United States Fire Insurance Company (hereinafter USF IC) and National Union Fire Insurance Company of Pittsburg, Pennsylvania (hereinafter National Union).

FACTS
Prior to May 1982, Pennzoil contracted with two independent contractors, Production to provide crane crews for its Intracoastal City, Louisiana, docking facility; and, Burner to furnish trucks and drivers.
On May 27, 1982, plaintiff, Steve Cannon, who was employed by Burner as a roustabout and driver, had occasion to deliver a 5,000 pound compressor to the Pennzoil dock yard. Upon arrival at the yard, Cannon was directed to the site of a large crane so that the compressor could be off-loaded to the ground. Plaintiff positioned his truck and trailer under the crane and climbed on the back of the trailer to unhitch the chain binders which held the compressor firmly to the truck bed. Thereafter, he connected the crane cable to a *943 padeye located on the top of the compressor. Cannon then signaled the crane operator, Chris Toups, an employee of Production, to take up the slack in the crane line. Cannon moved away from the load toward the right rear corner of the trailer. He testified that he was on his way off the trailer at that time. On the other hand, Chris Toups, the crane operator, and Bobby Toups, a member of the crane crew, both testified that Cannon stopped, turned toward the compressor and gave the lift signal. In either event, Chris Toups started to life the load to move it away from the "head-ache rack" at the front of the trailer and toward the left rear. Just as the load started to move, Cannon placed his hands on the compressor. Responding to this gesture, the crane operator stopped and lowered the compressor to the trailer bed and Cannon exited the trailer, landing on his feet some six to ten feet from the vehicle.
At trial, Cannon claimed that when Toups lifted the load, the compressor struck him, at approximately knee height, knocking him off the trailer bed. Both the crane operator and his helper, Bobby Toups, testified that the compressor never hit plaintiff and that it was resting on the bed of the trailer when Cannon jumped off the trailer bed. The Pennzoil accident report, prepared the same day and signed by plaintiff, agrees with the crane crew's version of what happened.
Cannon subsequently filed suit against Pennzoil, Production and USFIC claiming that: (1) Toups was negligent in lifting the load while he was still on the truck bed and in not having his crew attach a "tag" line to the load; (2) Production was negligent in hiring a crane operator with no formal training and in not properly supervising Toups; and, (3) Pennzoil was negligent in not training and/or supervising Toups. Pennzoil third-partied Production, Burner and their insurers seeking defense and/or indemnification under master service agreements executed by the parties and insurance contracts provided by the contractors naming Pennzoil as an additional insured. Insurance Company of North America, the provider of worker's compensation insurance to Burner, intervened seeking recovery of benefits it had paid to Cannon.
The case was tried to a jury of twelve persons over a period of three days. During trial, conflicting testimony was presented by expert witnesses as to whether or not it was safe to off-load a compressor from a truck with the driver on the truck bed and without the use of a "tag" line. The jury also heard the conflicting testimony of the crane crew and the plaintiff as to whether plaintiff gave a lift signal to the crane operator and whether the load ever struck plaintiff. The jury also considered the accident report, prepared at the time of the accident, which indicated that plaintiff was not struck by the compressor but had jumped off the truck. Finally, the jury considered the medical evidence, none of which corroborated, i.e., abrasion, cut, bruise, etc., that plaintiff was struck by the compressor. As aforestated, the jury found defendants free from negligence and, pursuant to their verdict, judgment was rendered dismissing plaintiff's suit.
Appellants, Cannon and INA, urge that the jury clearly erred when it found defendants to be without fault. We find no merit in this contention.
It is well established that where there is conflicting testimony, reasonable evaluations of credibility and reasonable inferences of fact reached by a jury should not be disturbed by an appellate court unless they are manifestly erroneous or clearly wrong, even if the court feels its own evaluations or inferences are just as or more reasonable. Boullion v. Romero, 490 So.2d 788 (La.App. 3rd Cir.1986); Vermilion Parish Policy Jury v. Landry, 485 So.2d 253 (La. App. 3rd Cir.1986). Our review of the record fails to convince us that the jury's finding that defendants were not negligent was clearly wrong or manifestly erroneous.
Appellants next contend that the trial judge committed reversible error when he required the jury to find defendant Toups "negligent" rather than "at fault" in causing Cannon's injury, suggesting that the word "fault" is more likely to be understood *944 by a jury than the word "negligence". La.C.C. art. 2315; La.C.C.P. art. 1812(C).
The only theory of liability in this case was one of negligence under La.C.C. art. 2315. In such a case, the terms "negligence" and "fault" are synonymous. The trial judge defined and explained the negligence theory in clear and concise terms in his charge to the jury. We find no error in his use of the term "negligent" in the jury interrogatories.
Finally, plaintiff contends that the trial judge erred when he failed to permit the jury to reach the question of fault on the part of Pennzoil and/or Production without first finding Toups negligent. The only people involved in the actual unloading of the compressor were the crane operator and the plaintiff. There was no issue or question of equipment failure or malfunction. The only possible alleged active tortfeasor was Toups. Pennzoil and/or Production could only be found to be vicariously liable through the crane operator. Since the crane operator was found free of fault, no liability attaches to Pennzoil and Production.
The second part of this appeal concerns the question of whether Pennzoil is entitled to defense and/or indemnity from Production, Burner and their respective insurers. At the outset, we note that the judgment of July 14, 1986, which is the subject of this portion of the appeal, only denies Pennzoil's claim for defense and/or indemnity from Burner and its insurer, National Union. The judgment is silent as to Pennzoil's claim against Production and its insurer, USFIC. We consider the silence of the judgment on the latter demand as a rejection thereof. See Soniat v. Whitmer, 141 La. 235, 74 So. 916 (1917), and Rills v. Southern Bell Telephone Company, 305 So.2d 596 (La.App. 1st Cir.1974).
Pennzoil claims that, pursuant to the master service contracts executed by the parties, it is entitled to defense, indemnity and/or contribution as well as attorney's fees.
The specific contractual language contained in the master service agreements between Pennzoil and the two contractors is identical and as follows:
"Contractor ... agrees to indemnify, defend, protect, and hold harmless company (Pennzoil) from any and all claims, suits, costs, liabilities, judgments and fines or penalties (except subsurface damage to reservoirs or formations) including the costs of defense thereof, brought or asserted by any person, firm, or organization not an employee of company as provided for immediately above, including but not necessarily limited to, employees of contractor or any subcontractor, and any third person, whether occurring in, growing out of, incident to, or resulting directly or indirectly from the work or services to be performed, for damages on account of injury or death of persons or damage to or destruction of company's property, contractor's property, or that of any third persons, and whether the liability or responsibility arises from the work or services to be performed, or as the result of some condition of the premises or property of company or of the unseaworthiness of any vessel, whether in tort, under contract or by virtue of any liability assumed by company under contract or otherwise, or whether occasioned, brought about or caused in whole or in part by the sole or concurrent negligence of its company, its agents, directors, officers, servants, subcontractors, or otherwise, regardless of whether such conditions, unseaworthiness or sole or concurrent negligence be active or passive, primary or secondary."
Appellees contend the provisions of the Louisiana Oilfield Indemnity Act, La.R.S. 9:2780 applies so as to bar Pennzoil's claims in this regard.
Pennzoil also alleges that the contractors, pursuant to the contracts, agreed to procure insurance providing coverage to Pennzoil for claims such as the one brought by Steve Cannon. Third party defendants urge that the provisions of the contract requiring insurance coverage for Pennzoil are invalid. Paragraph G of Section 2780 specifically prohibits the enforcement *945 of an agreement which requires a waiver of subrogation, additional named insured endorsements or any other form of insurance protection that would frustrate or circumvent the prohibitions of the Louisiana Oilfield Indemnity Act.
In 1981 the Louisiana Legislature adopted the Oilfield Indemnity Act, La.R.S. 9:2780. The intent of the legislature in adopting this legislation is spelled out in Section A thereof, which provides as follows:
"A. The legislature finds that an inequity is foisted on certain contractors and their employees by the defense or indemnity provisions, either or both, contained in some agreements pertaining to wells for oil, gas, or water, or drilling for minerals which occur in a solid, liquid, gaseous, or other state, to the extent those provisions apply to death or bodily injury to persons. It is the intent of the legislature by this Section to declare null and void and against public policy of the state of Louisiana any provision in any agreement which requires defense and/or indemnification, for death or bodily injury to persons, where there is negligence or fault (strict liability) on the part of the indemnitee, or an agent or employee of the indemnitee, or an independent contractor who is directly responsible to the indemnitee."
That act, by its terms is made applicable to any agreement, written or oral, concerning any operations related to the exploration, development, production, or transportation of oil, gas, etc. Pennzoil concedes that its agreements with Production and Burner are subject to the provisions of La.R.S. 9:2780 but urge that, since Pennzoil was ultimately found to be without fault, Production, Burner and their insurers should be required to pay Pennzoil's (the indemnitee's) defense costs, including attorney's fees. On the other hand, Production, Burner and their insurers contend, and the trial court presumably found, that the master service agreements, insofar as they require indemnification of Pennzoil and/or insurance protection, were null and void ab initio and of no force or effect.
In the instant case, the trial court found no negligence or fault on the part of any of the defendants and dismissed plaintiff's suit. We affirm this conclusion. Therefore, this appeal raises no issue as to indemnification, other than the right of Pennzoil to recover its defense costs, including attorney's fees, under the master service agreements.
Decisions of the courts on this precise issue, both state and federal, have been inconsistent. As stated in 47 L.L.R. at pages 85 and 111:
"[Historically] ... it has been difficult to determine when an indemnitor has an obligation to defend an indemnitee under the terms of an indemnity agreement governed by Louisiana law. Indemnitees have argued that, even where the indemnitor is not obligated to indemnify the indemnitee for his own negligence or fault, the indemnitor should be required to pay the indemnitee's defense costs when the indemnitee is ultimately found to be free of fault. Indemnitors, on the other hand, argue that they should not be required to defend any case containing allegations, which if proved, would preclude indemnification for the judgment against the indemnitee. As Judge Politz observed in Sullen v. Missouri Pacific Railroad Co., the response of the courts has been ambivalent. In both state and federal courts applying Louisiana law, some cases have accepted the indemnitees' arguments and other cases have accepted the indemnitors' arguments. Other states are also split. Florida, North Dakota, and Alaska hold that the pleadings rather than the outcome on the liability issue determine the obligation to defend. Iowa and Georgia look to the outcome on the liability issue and adopt the indemnitees' arguments on the obligation to defend....
. . . . .
"It appears that the Louisiana courts have approached the obligation to defend on a case by case basis. Often the issue of the obligation to defend has been treated in a cursory manner with little discussion and no reference to other *946 cases which have considered the obligation. At other times, it appears that only one side of the argument was presented. No case has discussed the issue in detail and compared the merits of the outcome approach to the pleading approach. The result has been a hodgepodge of apparently inconsistent opinions. Nevertheless, a close examination of the recent decisions reveals a line of cases apparently applying the pleading approach, followed by three cases apparently rejecting the pleading approach in favor of an outcome approach." (Footnotes omitted).
Recently, in Meloy v. Conoco, Inc., 504 So.2d 833 (La.1987), the Supreme Court, in response to questions certified to it by the U.S. Court of Appeal for the Fifth Circuit, set to rest the conflicts in previous jurisprudence on the issue to defend based on indemnification agreements contained in master service agreements covered by the Louisiana Oilfield Indemnity Act of 1981. In Meloy, supra, the Supreme Court responded to the certified questions as follows:

"JUDGMENT
For the foregoing reasons, we render the following judgment in response to the certified questions:
1. The allegations of the plaintiff's suit against the indemnitee are irrelevant to the indemnitor's obligation to pay. Rather, it is the terms of the indemnity agreement which govern the obligations of the parties.
2. After trial on the merits, if the indemnitee is found free from fault, the Act does not prohibit the indemnitee from recovering its cost of defense. Whether the injury is found to have resulted in whole or in part from the fault of the indemnitor does not affect the indemnitee's right to recover its cost of defense provided it is free from fault.
3. The Louisiana Oilfield Indemnity Act of 1981, La.R.S. 9:2780 nullifies completely any provision in any agreement that requires indemnification where there is any negligence or fault on the part of the indemnitee."
The decision in Meloy is dispositive of the issues presented on appeal with regard to Pennzoil's third party demands against Production, Burner and their insurers. Pennzoil having been found free from fault, after trial on the merits, is entitled to recover the cost of its defense under the agreements between it, Production and Burner, and the trial court erred in concluding otherwise. We note, in deference to the learned trial judge, that the decision in Meloy was reported in April of 1987, long after rendition of the trial court's judgment.
In deciding as it did, the trial court did not consider the issue of quantum in connection with Pennzoil's entitlement to recover the cost of its defense. The record in this case is not sufficiently complete to allow this court to make such an award under authority of Gonzales v. The Xerox Corporation et al, 320 So.2d 163 (La.1975). Accordingly, we will remand this matter to the trial court for that limited purpose.
For these reasons the judgment of the trial court dated June 24, 1986, denying plaintiff's claim for damages and dismissing with prejudice his suit against Pennzoil Company, Production Welding, Inc., and United States Fire Insurance Company, as well as the intervention of Insurance Company of North America, is affirmed. We reverse the judgment of the trial court dated July 14, 1986, and render judgment in favor of Third Party Plaintiff, Pennzoil Company, and against Third Party Defendants, Production Welding, Inc., United States Fire Insurance Company, Burner Fire Control, Inc., and National Union Fire Insurance Company of Pittsburg, Pennsylvania, for all costs incurred by Pennzoil Company in defense of this suit, including reasonable attorney's fees. We remand this matter to the trial court for the limited purpose of determining the amount to which Pennzoil Company is entitled under this judgment. Costs of this appeal are assessed one-half (½) to plaintiff-appellant, Steve C. Cannon, and Insurance Company of North America, and one-half (½) to Third Party Defendants, Production Welding, Inc., United States Fire Insurance Company, *947 Burner Fire Control, Inc., and National Union Fire Insurance Company of Pittsburg, Pennsylvania.
AFFIRMED IN PART; REVERSED IN PART; AND, REMANDED.