|,PETERS, Judge.
This case involves an indemnity and defense claim in the context of a suit for personal injury damages. The indemnitee now appeals an adverse summary judgment in favor of the indemnitor and its insurer, dismissing its cross-claim for indemnity.
DISCUSSION OF THE RECORD
A-Way Tank Service, Inc. (A-Way) was in the business of servicing water tanks/towers, which services included sandblasting and painting. On February 14, 1990, A-Way and Consolidated Employment Systems, Inc. (CESI) entered into a service agreement whereby CESI agreed to provide A-Way with personnel and to place all personnel on the CESI payroll. In return, CESI was to invoice A-Way a percentage of the hourly wages. The service agreement also provided that CESI would be bound by terms and conditions outlined in a Hold Harmless and Indemnity Agreement attached to the service agreement and that CESI would maintain insurance coverage.
Michael Todd Walters was hired by Archie Wayne Wilkins, the owner of A-Way, as a groundsman. Although hired by Wilkins, Walters completed a CESI employment application and received paychecks from CESI. In September of 1990, A-Way contracted with the Greater Lake Charles Water Company to sandblast and paint a water tower. In order to prevent the blasting and painting materials from escaping into the atmosphere, A-Way shrouded the tower with a tarpaulin. Workers were required to secure the tarpaulin by tying its straps to a cable located above a catwalk. In order to tie the straps to the cable, a worker had to stand on the handrail of the catwalk located in excess of 100 feet above the ground. Employees of A-Way/CESI successfully performed this task.
*3 On September 26, 1990, Mitchell May-eaux, a foreman for A-Way, instructed Walters to tie off the tarpaulin. However, Walters, who had performed this duty on | gother occasions without incident, informed Mayeaux that he did not “feel like going up top” that day because he had a cold. Mayeaux gave Walters the ultimatum of climbing or going home. Walters chose to perform his duties. He had successfully tied off a portion of the tarpaulin and was proceeding on to other duties when he spotted two straps on the tarpaulin that were untied. While in the process of tying off these two straps, Walters fell to the ground and sustained severe injuries.
Walters initially filed a tort suit against A-Way, Wilkins, and Mayeaux wherein he raised claims under both negligence and intentional tort theories.[1] Through supplemental and amending petitions, he added as defendants CESI; Certain Underwriters at Lloyds London (Lloyds), the general liability insurer of CESI; and Employers Insurance of Wausau (Wausau), the workers’ compensation insurer of CESI. All of these defendants filed answers to the suit. In their individual answers, Wilkins, A-Way, CESI, Lloyds, and Wausau each asserted that they were individually immune from suit in tort, arguing that Walters’ sole remedy against each of them was under the Louisiana Workers’ Compensation Law.
After issue had been joined, on February 16, 1993, A-Way, Wilkins, and May-eaux filed a cross-claim against CESI and Lloyds, seeking indemnity and a defense pursuant to CESI’s contractual agreement with A-Way. The language in the agreement relied upon by the cross-claimants provided in part as follows:
CESI agrees to protect, defend, indemnify and hold harmless [A-Way], its Stockholders, Officers, Directors, Agents and/or Employees from and against any and all claims, demands, losses, damages, suits and expenses, including attorney’s fees, for damages and/or injury to persons and/or property (including, but not limited to, claims, demands or suits for bodily injury, illness, disease, death, loss of wages or services, maintenance cure or property damage) which may be brought against [A-jWay3], its Stockholders, Officers, Directors, Agents and/or Employees (including, but not limited to, those brought by CESI, CESI’s Employees and Agents, Subcontractors, their Agents and Employees, or any Third Party) incident to, arising out of, connected in any manner with, directly or indirectly, or resulting from the activities of CESI, its Agents, Employees, Subcontractors, or Third Parties, or connected in any manner with the performance of the work by the under [sic] the SERVICE AGREEMENT or failure to perform thereunder by CESI, its Agents, Employees, Subcontractor or Third Parties or in connection with the work to be performed, services rendered or material furnished to or for the benefit of [A-Way]. The foregoing indemnification by CESI shall apply regardless of whether such claim, demand, loss, damage, suit and/or expense is contributed to in part by the negligence or fault of [A-Way] or the concurrent negligence or fault of its Stockholders, Officers, Directors, Agents and/or Employees and/or whether such was due to imperfections, latent, patent or pre-existing, or otherwise, or from any other cause whatsoever. Pursuant *4 to the terms of the SERVICE AGREEMENT, CESI agrees to fully insure the above contractual indemnity and to cause such insurers to name [A-Way] in such insurance as an insured and to waive all rights of subrogation against [A-Way], its Stockholders, Officers, Directors, Agents and/or Employees.
(Emphasis added.)
On March 10, 1993, CESI and Lloyds responded to the cross-claim by filing an answer denying responsibility to A-Way for indemnity and a for a legal defense.
In the months that followed, the trial court considered a number of summary judgment motions addressing the employment status of Walters. Ultimately, in separate judgments, the trial court concluded that Walters was the employee of both CESI and A-Way. In reaching that conclusion, the trial court dismissed Walters’ negligence claims but preserved his intentional tort claims against both of these employers.
On September 5, 1995, A-Way filed a second cross-claim against CESI and Lloyds, again praying for indemnity and for a defense to Walters’ suit. Wilkins and Mayeaux did not join in this cross-claim. CESI and Lloyds answered this cross-claim by again denying responsibility to AWay for indemnity or a defense to Walters’ suit for intentional torts or acts. AWay, Wilkins, and Mayeaux dismissed their February j416, 1993 cross-claim by motion and order filed July 23, 1998. However, in the dismissal, A-Way reserved its rights asserted in its September 5,1995 cross-claim.
On April 2, 1996, Walters dismissed all claims against all defendants with prejudice, subject to the reservation of his claims against CESI solely to the extent necessary to preserve his rights against Lloyds. This motion 'and order dismissing the claims resulted from a negotiated settlement. A judgment of the trial court signed on August 1, 1997, granted summary judgment in favor of A-Way and against Lloyds to the extent that Lloyds was required to reimburse and indemnify A-Way for its reasonable defense costs and attorney fees associated with its defense of Walters’ claim based on ordinary negligence.
The April 2, 1996 settlement compromised the intentional tort aspect of Walters’ claim, and the rendition of the August 1, 1997 judgment left as the only indemnity issue the indemnification of A-Way for its contribution to the intentional tort claim settlement and repayment of the defense costs. On November 10, 1999, CESI and Lloyds filed a motion for summary judgment seeking dismissal of A-Way’s remaining cross-claim addressing this issue. In the motion, CESI and Lloyds asserted that (1) they did not unambiguously agree to indemnify A-Way for damages resulting from the intentional acts of A-Way and/or (2) A-Way could not have been held actually liable for Walters’ intentional act claim such that A-Way’s settlement of the intentional act claim was unreasonable and unnecessary. On January 14, 2000, the trial court granted summary judgment in favor of CESI and Lloyds, dismissing all claims and cross-claims of A-Way against them. In doing so, the trial court concluded that, because A-Way did not give CESI an opportunity to approve the settlement, AWay was required to prove actual, rather than potential, liability for an intentional act in order to defeat the motion for summary judgment. Further, the trial court found | Kthat there was insufficient proof of actual liability for intentional acts.
A-Way appealed the summary judgment, contending that the trial court erred in concluding that (1) CESI did not owe it a duty to indemnify and defend on claims for intentional acts, (2) Lloyds did not have *5 a duty to defend A-Way for the claims for intentional tort, and (3) Lloyds’ duty to it arose out of the same obligation as CESI’s duty.
OPINION
A motion for summary judgment must be granted if the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits show that there is no genuine issue of material fact and that the mover is entitled to the judgment as a matter of law. La.Code Civ.P. art. 966(B). The procedure is now favored. La.Code Civ.P. art. 966(A)(2). Initially, the burden of producing evidence at the hearing on the motion for summary judgment is placed on the mover, who ordinarily can meet that burden by submitting affidavits or by pointing out the lack of factual support for an essential element in the opponent’s case. La.Code Civ.P. art. 966(C)(2); Babin v. Winn-Dixie La., Inc., 00-0078 (La.6/30/00), 764 So.2d 37. At that point, the party who bears the burden of proof at trial must come forth with evidence that demonstrates he will be able to meet that burden at the trial on the merits. Id. Once the moving party has properly supported the motion for summary judgment, the failure of the nonmoving party to produce evidence of a material issue of fact requires the granting of the motion. Id.
Pivotal to the issue of indemnity under this agreement is whether A-Way was required to prove actual liability or potential liability to Walters to be successful in its indemnity claim. A-Way contends that potential liability was its burden, while CESI and Lloyds contend that A-Way was required to prove actual liability. Both cite Morris v. Schlumberger, Ltd., 445 So.2d 1242 (La.App. 3 Cir.), writ denied, 449 So.2d 1345 (La.1984), in support of their positions. In Morris, this court stated the following in the context of a maritime contract:
The indemnitee’s unilateral act cannot bind the indemnitor without prior notice and an opportunity to defend which are indispensable due process requirements.
Under equitable principles of indemnity, in order for a settling indemnitee to support his indemnity claim he must prove actual liability to the original plaintiff and that the amount paid in settlement was reasonable. To avoid having to prove actual liability, the in-demnitee should offer the indemnitor before any settlement is concluded the choice of (1) approving the settlement or (2) taking over the indemnitee’s defense. If the indemnitor refuses to take either course, then the indemnitee will only be required to show potential liability to the original plaintiff to support his claim for indemnity. There is no rigid requirement that the indemnitee offer the above precise choice to the indemnitor. The 'primary concern is fairness to the indemnitor. If it can be shown that the indemnitor was afforded substantially the same protection that the above choice affords, then the indemnitee will have to show only potential liability. A formal tender of defense is not required, rather only an opportunity to defend is necessary.
Id. at 1246 (citations omitted) (emphasis added).
The terms of the indemnity agreement govern the obligations of the parties. Meloy v. Conoco, Inc., 504 So.2d 833 (La.1987). In this case, the indemnity agreement is silent on the issue of tender and notification. Therefore, as in Morris, we find that the equitable principles of indemnity must apply.
In the instant case, it is clear from the record that A-Way offered CESI and Lloyds the option of assuming its defense *6 pursuant to the agreement. In February of 1993, A-Way, Wilkins, and Mayeaux filed a cross-claim seeking judicial recognition of the indemnification agreement. CESI and Lloyds denied the existence of this obligation in their answer to the cross-claim. Before the settlement was consummated, A-Way, in September of 1995, filed a second cross-claim against CESI and Lloyds, again seeking recognition of its indemnification rights. Again, CESI and 17Lloyds denied, by answer, the existence of the obligation. Additionally, as settlement negotiations progressed, counsel for A-Way continued to press for CESI to honor its duty to defend A-Way. The record contains a letter dated October 19, 1995, from A-Way’s attorney to several other attorneys, including counsel for CESI and Lloyds. The letter listed the perceived exposure of insurers involved in the litigation, including Lloyds’ exposure; referenced the indemnity agreement and duty to defend; and stated in part:
As you are aware, Mr. Walters has given us until Friday to respond to his latest offer. On behalf of my clients, I am hereby making demand upon each of you to negotiate with [Walters’ attorney] in good faith toward resolving this case before trial.
My client is an insured under each of your respective policies. Therefore, you owe my client a duty of good faith and fair dealing. In the body of this letter I will outline the exposure I believe each of your respective clients have. If you disagree, I would appreciate it if you would respond and give me specific facts and/or jurisprudence upon which you rely.
[[Image here]]
Considering the magnitude of Mr. Walters’ injuries, if this case goes to trial, A-Way Tank is being exposed for liability in excess of the policy limits.
A-Way Tank is an insured under each of your policies. Each of you owe A-Way Tank a duty to protect A-Way Tank by settling within your policy limits. Considering the $1 million offer that has been made, I am putting each of you on notice that I feel you have failed to settle within your policy limits when afforded the opportunity to do so and therefore believe you will be responsible for any excess judgment taken against my client.
I would ask that if you disagree with any of the above, each of you give me specific policy provisions upon which you rely to dispute my allegations.
As of the time of the signing of the judgment of dismissal on April 2, 1996, which was based upon the settlement, neither CESI nor Lloyds had stepped forward to provide a defense for A-Way. Given these facts, it was highly unlikely that CESI would seriously have considered taking over the defense of Walters’ claims against A-Way.
However, Morris requires that the in-demnitee also give the indemnitor the Rchoice of approving the settlement (or a substantially similar protection) prior to the conclusion of the settlement. It is not the indemnitee who has the choice of which offer to make to the indemnitor in order to avoid having to prove actual liability. In the instant case, A-Way refers in its appellate brief to the alleged participation of CESI and Lloyds in mediation and discussions between its attorney and counsel for CESI and Lloyds regarding the duty to defend and indemnify. However, these alleged facts are not in evidence on the motion for summary judgment, and we may not consider them. See Willis v. Letulle, 597 So.2d 456 (La.App. 1 Cir.1992) (holding that the briefs of the parties are not part of the record on appeal). A-Way did properly submit the *7 October 19, 1995 letter as set forth above. However, the letter merely urges the participation in settlement negotiations; it does not set forth the terms of a settlement. Furthermore, the actual judgment of dismissal based on the settlement was not signed until April 2, 1996, over five months after the letter, rendering the timing of the letter too attenuated to satisfy the fairness concerns of Morris regarding the opportunity to approve the settlement. Additionally, there is no evidence properly before us that CESI and Lloyds were continuously kept informed of the progress of the settlement negotiations or that they were otherwise afforded sufficient opportunity to approve the contemplated settlement. Thus, we find that the trial court did not err in holding that A-Way was required to prove actual, rather than potential, liability.
Concerning actual liability for intentional acts in this context, our supreme court has held that the meaning of intent is that the actor either (1) consciously desired the physical result of his act, whatever the likelihood of that result occurring from his conduct, or (2) knew that the result was substantially certain to follow from his conduct, whatever his desire might have been as to that result. See Reeves v. Structural Preservation Sys., 98-1795 (La.3/12/99), 731 So.2d 208. Our supreme |flcourt has continued to narrowly construe the intentional act exception. See id.
In the instant case, CESI and Lloyds submitted evidence indicating that A-Way could not meet its burden of proving at a trial on the merits that it was at fault for intentional acts. Specifically, it submitted the deposition testimony of Walters, who had tied off the tarpaulin on other occasions prior to the accident at issue. When asked whether he believed that anyone at A-Way wanted him to be injured, Walters responded that he believed there was negligence. He testified that he had no reason to think that anyone at A-Way wanted him to get hurt. Additionally, A-Way’s owner, Wilkins, stated in affidavit that he did not consciously desire that Walters or any other person fall or be injured in any way while tying off the tarpaulin and that he did not know or suspect that it was substantially certain that Walters or any other person would fall while tying off the tarpaulin. Further, A-Way’s foreman, Mayeaux, stated in affidavit that he did not, feel it was inevitable or virtually sure that Walters would fall on the date at issue and that he did not believe Walters would fall while performing the activity. He further attested that he did not consciously desire that Walters fall or be injured in any way when he asked him to climb the tank to tie off the tarpaulin and that he did not know or suspect that it was substantially certain Walters would fall while tying off the tarpaulin.
On the other hand, it is undisputed that Walters did not have any safety equipment at the time of the accident, that he reported to Mayeaux that he had a cold, and that the activity he was performing at the time of the accident required him to stand on the handrail of a catwalk over 100 feet above the ground. However, these facts are not sufficient to create a material issue of fact.
Specifically, the substantially-certain-to-follow element requires more than a showing of a reasonable probability that an injury will occur. Id. Further, the mere | inappreciation of a risk does not rise to the level of intent, and reckless or wanton conduct by an employer does not constitute intentional wrongdoing. Id. Indeed, “[bjelieving that someone may, or even probably will, eventually get hurt if a workplace practice is continued does not rise to the level of an intentional act, but *8 instead falls within the range of negligent acts that are covered by workers’ compensation.” Id. at 212.
Rather, the substantially-certain-to-follow element
expresses the concept that an actor with such a certainty cannot be believed if he denies that he knew the consequences would follow. In human experience, we know that specific consequences are substantially certain to follow some acts. If the actor throws a bomb into an office occupied by two persons, but swears that he only “intended” to hurt one of them, we must conclude that he is nonetheless guilty of an intentional tort as to the other, since he knows to a virtual certainty that harmful consequences will follow his conduct, regardless of his subjective desire.
Malone & Johnson, Louisiana Civil Law Treatise, Volume 14,, Workers’ Compensation Law & Practice, § 365, p. 208.
Id. at 212-13.
In Reeves, the employer directed an employee to manually move a sandblasting pot that weighed 350 to 400 pounds when empty, a procedure which was prohibited by OSHA and which the employee’s supervisor feared would eventually lead to injury. However, as in the instant case, the plaintiff in that case as well as other employees had performed the activity at issue on several occasions without injury. In fact, as in the instant case, the plaintiff had already partially performed the activity with no trouble. Therefore, the supreme court held that it could not reasonably be said that it was substantially certain that the plaintiff would be injured by engaging in the activity. In doing so, the supreme court, finding manifest error, reversed a jury finding of an intentional act.
Inin the instant case, as in Reeves, while there was evidence sufficient to show that A-Way’s conduct may have been negligent of even grossly negligent, there was insufficient evidence presented to show that AWay committed an intentional act. Thus, even assuming the indemnity agreement covered intentional acts, the trial court did not err in dismissing A-Way’s cross-claim for indemnity pursuant to its written contract with CESI.
In any event, A-Way contends that the trial court erred in ruling that Lloyds’ duty to A-Way arose out of the same obligation as CESI’s duty, i.e., the contractual indemnity language previously quoted. Rather, A-Way contends that Lloyds’ duty to defend and indemnify it arose out of the Lloyds insurance policy.
However, CESI and Lloyds, not A-Way, filed the motion for summary judgment. The motion itself does not clearly place the Lloyds insurance issue before the court. The memorandum of CESI and Lloyds in support of the motion does address the insurance issue, but only to the extent of alleging prior court statements regarding the lack of coverage under the policy. Moreover, CESI and Lloyds did not file as an exhibit the actual insurance policy for the trial court to interpret but filed a document of the trial court dated March 14, 1997, and entitled OPINION. That document states in part that “the exclusion for employee suits and intentional torts contained in [the Lloyds policy] precludes liability for the cost of defending against [Walters’] petition for ... intentional tort.” We interpret the memorandum and exhibit as placing before the trial court the conclusive effect of a prior ruling and not the interpretation of the policy language. Under the Uniform Rules Courts of Appeal, Rule 1-3, we review only issues which were first submitted to the trial court, unless the interest of justice clearly re *9 quires otherwise. Accordingly, we will review at this time only the issue of the effect of the prior document entitled OPINION.
|12We do not find that the document entitled OPINION was in response to any specific pleading filed by any party but rather was an ex parte response by the court to discussions held at a status conference. Additionally, after this document was filed, A-Way asked for clarification, and the judgment resulting from the clarification hearing referenced only the negligence issue. Therefore, we do not conclude that the trial court has ever affirmatively ruled on the insurance coverage issue. Thus, we decline to accept Lloyds’ position as to the effect of that ex parte response by the trial court. Rather, we reverse the judgment below to the extent of the dismissal of Lloyds on this issue and remand for further proceedings.
DISPOSITION
For the foregoing reasons, we reverse the summary judgment to the extent of the dismissal of Lloyds on the insurance policy issue and remand for further proceedings consistent with this opinion. We affirm the judgment in all other respects. Additionally, we assess fifty percent of the costs of this appeal to A-Way and fifty percent to Lloyds.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.

. The record contains volumes of other pleadings, motions, and rulings, some of which address other issues raised by the parties to this appeal. However, we will discuss only those pleadings, motions, and rulings which we deem pertinent to the issues at hand.