Judge PATRICIA RIVET MURRAY.
| ¶ This is a personal injury action arising out of a freight elevator accident. A third-party plaintiff, Food Marketing Institute (“FMI”), appeals from the trial court’s decision granting the motion for summary judgment filed by a third-party defendant, GES Exposition, Inc. (“GES”). We affirm.
FACTUAL AND PROCEDURAL BACKGROUND
On February 23, 1999, David Klutz was injured while loading equipment into a freight elevator at the Ernest N. Morial New Orleans Exhibition Hall (the “Hall”). According to the petition, the accident occurred when the freight elevator door descended and struck Mr. Klutz on his back. At the time of the accident, Mr. Klutz was in the course and scope of his employment with Pace Systems & Paramount Organizations (“Pace”).[1] In his deposition, Mr. Klutz testified that his employer, Pace, is “hired through the company that FMI hires to produce their show for them,” which is O’Keefe Communications. O’Keefe Communications is a software company that puts together FMI’s shows. O’Keefe contracts with Pace to do the hardware and to bring in the sound, lights, video, teleprompters, and the |2crew to produce the show. At the time of the accident, Mr. Klutz was bringing equipment into the Hall in preparation for a FMI show.
On January 19, 2000, Mr. Klutz commenced this suit against the following defendants: (i) the two entities that allegedly manage, control, and administer the Hall— •the New Orleans Public Facility Management, Inc. (“NOPFMI”) and the Ernest N. Morial New Orleans Exhibition Hall Authority (the “Authority”) (collectively the “Convention Center”); (ii) the Hall’s alleged exclusive elevator maintenance and service contractor, Kone, Inc. (formerly known as Montgomery Kone, Inc.)(“Kone”); and (iii) the alleged liability insurer of the Convention Center and Kone, Zurich Insurance Company.
Two third party demands were filed seeking, among other things, contractual indemnification pursuant to two different contracts between two different parties. First, the Convention Center filed a third party demand against FMI. This demand was based on the contract between the Convention Center and FMI pursuant to which FMI contracted with the Convention Center to use the Hall for its show. Second, FMI filed a third party demand against GES. This demand was based on the contract between FMI and GES pursuant to which FMI retained GES as its general contractor for FMI’s shows.
Several of the parties filed motions for summary judgment. The trial court de *1023 nied all the motions except for the one filed by GES, which it granted. From that partial final judgment dismissing GES, FMI appeals.
DISCUSSION
Appellate courts review grants of summary judgment de novo using the same standard applied by the trial court in deciding the motion for summary judgment. Schmidt v. Chevez, 2000-2456, p. 4 (La. App. 4 Cir.1/10/01), 778 So.2d 668, 670. Under that standard, summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(B); Schmidt, 2000-2456 at p. 3, 778 So.2d at 670. “Favored in Louisiana, the summary judgment procedure ‘is designed to secure the just, speedy, and inexpensive determination of every action’ and shall be construed to accomplish these ends.” King v. Parish National Bank, 2004-0337, p. 7 (La.10/19/04), 885 So.2d 540, 545 (quoting La. C.C.P. art. 966(A)(2)).
On appeal, FMI argues that it is premature to grant summary judgment on the indemnity agreements before the fact-finder determined who, if anyone, is liable for Mr. Klutz’s injuries. FMI further argues that if a genuine issue of fact exists regarding the indemnity agreement between the Convention Center and FMI, then a genuine issue of fact exists regarding the indemnity agreement between FMI and GES. FMI thus contends the trial’s court’s decision denying its motion for summary judgment on the issue of the indemnity between the Convention Center and FMI, but granting GES’s motion for summary judgment on the issue of the indemnity between FMI and GES is inconsistent.
GES counters that the trial court’s decision is not inconsistent, but rather based on the different contractual indemnification agreements between the different parties. We agree. Because GES did not file a supervisory writ application, the issue of the indemnification rights between the Convention Center and GES is not before us. We thus do not address it.
The sole issue presented on this appeal is whether the trial court correctly concluded that GES was not liable under the indemnification agreement between it|4and FMI for the claims asserted by Mr. Klutz in this case. The language in the indemnity agreement dictates the obligation of the parties. Kinsinger v. Taco Tico, Inc., 2003-622, p. 1 (La.App. 5 Cir. 11/12/03), 861 So.2d 669, 671. An indemnity agreement is a specialized form of contract. Meloy v. Conoco, Inc., 504 So.2d 833 (La.1987). When a contract is to be interpreted by the court as a matter of law, a motion for summary judgment is the proper procedural vehicle to present the question to the court. Messinger v. Rosenblum, 2003-2209 (La.App. 4 Cir. 5/11/05), 904 So.2d 760, 765 (citing McCrory v. Terminix Service Co., 609 So.2d 883, 886 (La. App. 4th Cir.1992)).
The indemnification rights between FMI and GES are governed by the contract between those parties dated April 11,1995, pursuant to which GES agreed to serve as general contractor for producing trade events on FMI’s behalf. The pertinent four provisions of that contract are as follows:
(i) Section 1.3, which provides:
FMI (including its directors, officers, agents, and employees) is to be named as an additional insured under all coverages except Workers’ Compensation and Automobile Liability, and the certificate of insurance or certified policy, if requested, must so state. Coverage af *1024 forded under this paragraph shall be primary as respects FMI, its directors, officers, agents and employees.
(ii) Section 1.4, which provides:
GES covenants to save, defend, keep harmless and indemnify FMI and all of its directors, officers, agents and employees (collectively FMI) from and against any and all claims, loss, damage, injury, cost (including court costs and attorney’s fees), charge, liability or exposure resulting from or arising out of GES performance or non-performance of the terms of the Contract or its obligations under the Contract. This indemnification shall continue in full force and effect until GES completes all of the work required under the Contract, except that indemnification shall continue for all claims involving products or completed operations after final acceptance of the work by FMI for which FMI gives notice to GES after FMI’s final acceptance of the work.
| s(iii) Section 1.5, which provides:
GES shall be responsible for the work performed under the Contract documents, for all materials, tools, equipment, appliances, and property of any and all description used in connection with the work. GES assumes liability for direct and indirect damage or injury to the property or persons used or employed on or in connection with the work contracted for, and of all damage or injury to any person or property wherever located, resulting from any action, omission, commission or operation under the Contract, to the extent of GES’ negligence, with the contracted work, until final acceptance of the work by FMI. (iv) Section 1.7, which provides:
There shall be no contractual relationship between any subcontractor and FMI. GES shall be as fully responsible to FMI for the acts and omissions of the subcontractors and of persons employed by them as it is for acts and omissions of persons directly employed by it.
GES argues that none of these provisions apply. We separately address each of these provisions. First, as to Section 1.3, the question of insurance coverage, as FMI acknowledges, is independent of the question of indemnification. As FMI states, “[wjhether the St. Paul [GES’s insurer’s] policy of insurance issued to GES covers GES’ responsibility to FMI does not vitiate GES’ valid and enforceable contractual indemnity obligation to FMI.” Section 1.3 thus does not apply.
Second, Section 1.4 confines the right to indemnity to claims “arising out of GES[’s] performance or non-performance of the terms of the Contract.” The requirement in an indemnity agreement that the claim arise out of the contractor’s performance or non-performance of the contract has been construed to refer not to a showing of fault on the contractor’s part but rather to a showing of “a connexity similar to that required for determining cause-in-fact: Would the particular injury have occurred but for the performance of the work under the contract?” Perkins v. Rubicon, Inc., 563 So.2d 258, 259 (La.1990). Applying that standard, we find no | fierror in the trial court’s conclusion that Mr. Klutz’s claim did not arise out of GES’s performance or non-performance of the contract. There is no connexity between GES’s work as FMI’s contractor and the elevator malfunction. As GES points out, even FMI recognized the absurdity of suggesting such a factual con-nexity when it “questioned] the potential allowance of indemnification to the Convention Center for an accident occurring on a freight elevator,” which was under the Convention Center’s control. Section 1.4 thus does not apply.
Third, Section 1.5 confines GES’s assumption of liability for damages to *1025 claims that result from GES’s negligence. As noted above, neither the petition nor the third party demand asserts any negligence on the part of GES. Section 1.5 thus does not apply.
Finally, Section 1.7 confines GES’s assumption of responsibility to acts or omissions of its subcontractors. None of the parties alleged to be negligent was one of GES’s subcontractors. Section 1.7 thus does not apply.
Given that none of the provisions of the Contract upon which FMI relies apply, the trial court did not err in granting summary judgment in favor of GES.
DECREE
For the foregoing reasons, the judgment of the trial court is affirmed.
AFFIRMED.

. An intervention was filed by the Louisiana Workers' Compensation Corp. seeking to recover amounts it has paid to Mr. Klutz in compensation and medical benefits.