| | | |
|---|---|---|
| THOMAS RIGGIO | * | NO. 2024-CA-0436 |
| VERSUS | * | |
| | | COURT OF APPEAL |
| PORTS AMERICA | * | |
| LOUISIANA, L.L.C., ANDRE | | FOURTH CIRCUIT |
| BRIDGES, BOARD OF | * | |
| COMMISSIONERS OF THE | | STATE OF LOUISIANA |
| PORT OF NEW ORLEANS, | * * * * * * * | |
| AND ABC INSURANCE | | |
| COMPANY | | |

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2020-08935, DIVISION "B-11"
Honorable Marissa Hutabarat, Judge
* * * * * *
**Judge Rosemary Ledet**
* * * * * *

(Court composed of Chief Judge Terri F. Love, Judge Rosemary Ledet, Judge Nakisha Ervin-Knott)

Kirk N. Aurandt
Michael W. McMahon
DAIGLE FISSE & KESSENICH, PLC
P.O. Box 5350
Covington, LA 70434-5350

Gillis W.P. Klotz
FRILOT, LLC
1100 Poydras Street, Suite 3700

New Orleans, LA 70163

COUNSEL FOR THIRD-PARTY PLAINTIFF/APPELLANT

Robert I. Siegel
Elizabeth B. Carville
GIEGER, LABORDE & LAPEROUSE, LLC
701 Poydras Street, Suite 4800
New Orleans, Louisiana 70139-4800

Daniel J. Caruso
Charles E. Riley, IV
Alexandra E. Celio
SIMON PERAGINE SMITH & REDFEARN, LLP
1100 Poydras Street, 30th Floor
New Orleans, Louisiana 70163

COUNCIL FOR THIRD-PARTY DEFENDANTS/APPELLEES

**AFFIRMED IN PART; REVERSED IN PART; AND REMANDED**
**December 5, 2024**

This a personal injury suit arising out of a motor vehicular collision. Third-party plaintiff—Ports America Louisiana, L.L.C. ("Ports")—appeals from the trial court's decision granting the two summary judgment motions filed by three third-party defendants—STG Logistics, Inc. ("STG"), formerly known as XPO Logistics Drayage, LLD ("XPO"); Safeco Insurance Company of America ("Safeco"); and ACE American Insurance Company ("ACE") (collectively "Third-Party Defendants").[1] For the reasons that follow, we affirm the judgment granting ACE's

---

[1] STG and Safeco filed a joint summary judgment motion; ACE filed a separate summary judgment motion.

1

motion, reverse the judgment granting STG and Safeco's joint motion, and remand.

**FACTUAL AND PROCEDURAL BACKGROUND**

The underlying vehicular collision giving rise to this suit occurred on property owned by the Board of Commissioners of the Port of New Orleans (the "Board"), and leased and operated by Ports. Thomas Riggio ("Mr. Riggio") was the driver of one of the vehicles—a tractor-trailer owned by Mr. Riggio and leased to STG. Andre Bridges, Ports' employee, was the driver of the other vehicle—a Ports' yard truck.

Mr. Riggio filed this personal injury suit against Mr. Bridges, Ports, and the Board. In his petition, Mr. Riggio averred:

- On or about December 13, 2019, [Mr. Riggio] was working as a truck driver while operating a tractor-trailer for XPO Logistics [now STG].

- [Mr. Riggio] arrived at [Ports'] Nashville's terminal, located at 5901 Terminal Drive in New Orleans, Louisiana and parked his tractor-trailer to be loaded.

- At the same time, a [Ports'] unregistered yard truck . . . operated by a[n] employee, [Mr. Bridges,] attempted to make a right turn and go around the parked tractor-trailer operated by [Mr. Riggio], when suddenly the passenger side of chassis being towed by the vehicle operated by [Mr.

2

Bridges], struck the rear driver's side of the chassis of the vehicle operated by [Mr. Riggio].

In response, Ports filed demands for defense, indemnification, and insurance coverage against both Mr. Riggio and Third-Party Defendants—STG, Safeco,[2] and ACE. The basis for these demands was the Tariff for Facilities in the Port of New Orleans (the "Tariff"). In the demands, Ports averred that the Tariff imposed certain terms on "users" of its facilities and that both Mr. Riggio and STG were "users." Ports cited two provisions of the Tariff—Section II-200, "Consent to the Tariff";[3] and Section II-210, "Minimum Insurance Requirements."[4] Another

---

[2] The record on appeal does not include any explanation of Safeco's role in this matter other than an allegation in Ports' third-party demand that Safeco issued a policy of insurance to STG and an argument at the summary judgment hearing that Safeco denied coverage to Ports. A copy of Safeco's policy is not contained in the record on appeal.

[3] Section II-200 of the Tariff provides:

> This tariff applies by force of law to all users of the Ports America Properties and Facilities. Use of the wharves, Properties and Facilities under the jurisdiction of Ports America Louisiana, LLC . . . shall constitute a consent to the terms and conditions of this tariff and evidences an agreement on the part of all vessels, their owners . . . or other users to pay all applicable charges and abide by all rules and regulations of PORTS AMERICA, and abide by the rules and regulations of this tariff.

[4] Section II-210 of the Tariff provides:

> Grantees of Berth and outside operators functioning as set forth in this tariff shall be responsible for furnishing to PORTS AMERICA evidence of insurance coverage, including but not limited to Workers' Compensation, Automobile Liability, with limits of $500,000,00, Stevedore and Terminal Operator's Liability

pertinent provision of the Tariff, which Ports failed to cite, is Section II-216, "Ports

America Held Harmless."[5]

with limits of $500,000.00, all with deductible amounts acceptable to PORTS AMERICA and such other insurance, in such form and with minimum limits as PORTS AMERICA may require, depending on the type of work being performed. All insurance policies shall be issued by underwriters with an A.M. Best senior credit rating of "A" or better, with terms and conditions reasonably acceptable to PORTS AMERICA, with PORTS AMERICA as a named insured, with waiver of subrogation as to PORTS AMERICA.

Failure to obtain and retain or submit evidence of the insurance coverage's required by PORTS AMERICA shall constitute cause for denying the use of PORTS AMERICA facilities or immediate cancellation of use of facilities. This evidence shall be in the form of a current, valid certificate of insurance Failure to obtain and retain or submit evidence of the insurance coverage's required by PORTS AMERICA shall constitute cause for denying the use of PORTS AMERICA facilities or immediate cancellation of use of facilities. This evidence shall be in the form of a current, valid certificate of insurance. (See item 216 which also applies).

[5] Section II-216 of the Tariff provides:

Each . . . service provider to whom PORTS AMERICA and/or Board property has been assigned or allowed use of, or who are using or occupying same under any provision of this tariff, shall be responsible for and shall be liable for, severally, jointly and in solido, or in instances of outside operators functioning as set forth in this tariff shall be responsible for and take over and administer, any and all claims in any manner arising out of or connected with the performance of loading/unloading services by such User of the Berth, or in instances of outside operators functioning as set forth in this tariff, including, but not limited to, any and all claims for bodily injury, death, property (including cargo) damage, loss or shortage and/or for detention, demurrage or delay and shall defend, indemnify and hold harmless PORTS AMERICA and its officers, directors, employees and agents from and against any such claims, provided, however, that this provision will not relieve PORTS AMERICA from any liability which may arise out of its own negligence.

4

Following discovery, a trio of summary judgment motions were filed—Mr. Riggio filed one; ACE filed one; and STG and Safeco jointly filed one. Following a hearing, the trial court denied Mr. Riggio's motion, but granted Third-Party Defendants' two motions. This appeal by Ports followed.[6]

## DISCUSSION

Although Ports assigns multiple errors,[7] the gist of its arguments is that the trial court erred in granting third-party defendants' two summary judgment motions.

---

[6] This appeal does not include the denial of Mr. Riggio's summary judgment motion. Mr. Riggio is not a party to this appeal.

[7] Ports' three assigned errors are as follows:

1. In granting summary judgment in favor of Third-Party Defendants-Appellees, STG Logistics, Inc., f/n/a XPO Logistics Drayage, LLC (individually "STG") and Safeco Insurance Company of America (individually "Safeco"), the district court erred by holding that Defendant and Third-Party Plaintiff-Appellant, Ports America Louisiana, L.L.C. ("Ports America"), was required to produce evidence of the fault of STG or of STG's employees in order to have a valid claim for defense, indemnity, and insurance coverage against STG under Ports America's Tariff (the "Tariff") because the ruling failed to consider the circumstance where the claims of Plaintiff, Thomas Riggio, against Ports America are ultimately found to be without merit, and because the Tariff contains no such fault requirement on the part of the indemnitor.

2. The district court erred in granting summary judgment to STG and in dismissing Ports America's Third-Party Demand against STG for defense, indemnity, and insurance coverage because if, as the district court found, STG's insurance did not provide coverage to Ports America, then STG, as a user of Ports America's

5

*Summary judgment principles and standard of review*

This Court recently outlined the relevant summary judgment principles and standard of review were recently outlined by this Court in *Singleton v. Dillard Univ.*, 23-0295 (La. App. 4 Cir. 10/27/23), 376 So.3d 997, as follows:

- According to established jurisprudence, an appellate court reviews a trial court's ruling on a summary judgment motion by applying a *de novo* standard.

- To decide whether summary judgment is appropriate, an appellate court uses the same standards and rules as a trial court—whether there is any genuine issue of material fact, and whether the movant is entitled to judgment as a matter of law.

- The summary judgment procedure is codified in La. C.C.P. art. 966(A)(3), which provides that "a motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law."

- A genuine issue of fact is one as to which reasonable persons could disagree; if reasonable persons could reach only one conclusion, there is no need for trial on the issue, and the granting of summary judgment is appropriate.

---

facilities, necessarily breached its obligations under the Tariff to furnish insurance coverage to Ports America as a "named insured," and STG is liable to Ports America for that breach.

3. The district court erred in granting summary judgment in favor of Third-Party Defendant-Appellee, ACE American Insurance Company ("ACE"), because there is a genuine issue of material fact regarding whether Ports America is a named insured under the ACE policy.

- A material fact is one that might affect the outcome of the suit. Whether a fact is material must be determined based on the applicable substantive law.

- The summary judgment procedure is favored in Louisiana state courts and shall be construed to "secure the just, speedy, and inexpensive determination of every action, except those disallowed by Article 969." La. C.C.P. art. 966(A)(2).

- Nonetheless, Louisiana jurisprudence has recognized that any doubt as to a dispute regarding a material issue of fact must be resolved against granting the motion and in favor of a trial on the merits.

*Singleton*, 23-0295, pp. 5-6, 376 So.3d at 1000-01 (internal quotations and citations omitted and reformatted).

Here, the applicable substantive law, which determines materiality for summary judgment motion purposes, is three-fold—statutory, indemnity, and insurance law.

1. *Statutory Law—STG, Safeco, and ACE*

Third-Party Defendants—STG, Safeco, and ACE—argue, in support of their respective summary judgment motions, that the Tariff is a "motor vehicle transportation contract" covered by the Louisiana's Anti-Indemnification Act

7

("LAIA"), La. R.S. 9:2780.1.[8] Continuing, they contend that Ports, under the

Tariff, is demanding defense, indemnification, and insurance coverage for its own

---

[8] In 2010, the Louisiana Legislature enacted the LAIA, which governs indemnification clauses in certain defined "motor carrier transportation" and "construction" contracts; a "motor carrier transportation contract" is defined in La. R.S. 9:2780.1(A)(1) as follows:

> [A]ny contract, agreement, or understanding covering the transportation of property, other than agricultural products as defined in R.S. 9:3306 and timber without limitation, for compensation or hire by a motor carrier, entrance upon property by the motor carrier for the purpose of loading, unloading, or transporting property, other than agricultural products as defined in R.S. 9:3306 and timber without limitation, for compensation or hire, or a service incidental to any such activity, including but not limited to storage of property, other than agricultural products as defined in R.S. 9:3306 and timber without limitation, except the Uniform Intermodal Interchange and Facilities Access Agreement administered by the Intermodal Association of North America or other agreements providing for the interchange, use, or possession of intermodal chassis, containers, or other intermodal equipment.

The LAIA further provides:

> La. R.S. 9:2780.1(B) provides:
>
> Notwithstanding any provision of law to the contrary and except as otherwise provided in this Section, any provision, clause, covenant, or agreement contained in, collateral to, or affecting a motor carrier transportation contract or construction contract which purports to indemnify, defend, or hold harmless, or has the effect of indemnifying, defending, or holding harmless, the indemnitee from or against any liability for loss or damage resulting from the negligence or intentional acts or omissions of the indemnitee, an agent or employee of the indemnitee, or a third party over which the indemnitor has no control is contrary to the public policy of this state and is null, void, and unenforceable.

> La. R.S. 9:2780.1(C) provides:

8

fault, which the LAIA prohibits. For this reason, they contend that the Tariff

provisions at issue here are unlawful and unenforceable. Moreover, STG and

Safeco point out that Section II-216 of the Tariff, entitled "Ports America Held

Harmless,"[9] applies here. Section II-216 states that "this provision will not relieve

[Ports] from any liability which may arise out of its negligence."

Ports counters that the LAIA is inapposite because the Tariff is not a "motor

vehicle transportation agreement." Rather, it contends that the Tariff falls within

---

Notwithstanding any provision of law to the contrary and except as otherwise provided in this Section, any provision, clause, covenant, or agreement contained in, collateral to, or affecting a motor carrier transportation contract or construction contract which purports to require an indemnitor to procure liability insurance covering the acts or omissions or both of the indemnitee, its employees or agents, or the acts or omissions of a third party over whom the indemnitor has no control is null, void, and unenforceable. However, nothing in this Section shall be construed to prevent the indemnitee from requiring the indemnitor to provide proof of insurance for obligations covered by the contract.

La. R.S. 9:2780.1(D) provides:

Notwithstanding any contractual provision to the contrary, the Section shall apply to and govern any construction contract to be performed in this state and any motor carrier transportation contract relative to loading or unloading activities, or any services incidental thereto, which occur in this state. Any provision, covenant, or clause in such contracts which conflicts with the provisions of this Section shall be null, void, and unenforceable.

[9] This provision, quoted elsewhere in this opinion, is cross-referenced by Section 210 of the Tariff entitled "Minimum Insurance Requirements."

9

the exclusion from that term for "other agreements providing for the interchange, use, or possession of intermodal chassis, containers, or other intermodal equipment." La. R.S. 9:2780.1(A).

The trial court, in its written reasons for judgment, found that because the Tariff does not seek to indemnify Ports for the consequences of its own negligence, the Tariff does not violate the LAIA. In so finding, the trial court cited Section II-216 of the Tariff. On appeal, Ports does not dispute the trial court's finding that the Tariff does not violate the LAIA. Thus, we find no further statutory interpretation of the LAIA is warranted. Rather, resolution of the issues presented on this appeal requires the interpretation of two types of contractual agreements—an indemnity agreement: the Tariff; and insurance policies: the two policies that ACE issued to STG's predecessor, XPO.

### 2. *Indemnity Law—STG and Safeco*

An indemnity agreement is a specialized form of contract. *Meloy v. Conoco, Inc.*, 504 So.2d 833, 839 (La. 1987) (observing that "[a]n indemnity agreement is a specialized form of contract which is distinguishable from a liability insurance policy"). Summarizing indemnity law, the Louisiana Supreme Court, recently in

10

*Bennett v. DEMCO Energy Servs., LLC*, 23-01358 (La. 5/10/24), 386 So.3d 270,

observed:

- The rule of indemnity is based upon the general obligation to repair the damage caused by one's fault under La. C.C. art. 2315.

- An indemnity agreement is a contract wherein a party (the indemnitor) agrees to protect another (the indemnitee) against damages incurred by the latter as a result of his breach of a duty owed to a third party. Ronald J. Scalise, *Law of Obligations*, 6 LA. CIV. L. TREATISE § 11.27 (2d. ed. 2023).

- Unless there is a special provision of law to the contrary, indemnity agreements are valid and are not against the public order.

- A claim for indemnity is ordinarily brought through a third party demand, although can be raised, as in this matter, through a cross-claim pursuant to La. C.C.P. art. 1071.

*Bennett*, 23-01358, pp. 3-4, 386 So.3d at 273 (internal case citation omitted and

reformatted). Clarifying the procedural law regarding the timing of filing and

deciding indemnity claims, the Supreme Court in *Bennett* observed:

> [A]sserting a claim for indemnity, arising out of the same facts and circumstances, is not premature before a judicial finding of liability. The right to collect on an indemnity agreement is determined upon judgment or finding of liability or loss, but there is no prohibition on asserting a claim for indemnity in the same proceeding.

11

23-01358, pp. 8-9, 386 So.3d at 276. The Supreme Court further observed that the distinction between the right to make a claim for indemnity and the right to collect indemnity is significant. *Id.*

In interpreting an indemnity agreement, "[t]he allegations of the plaintiff's suit against the indemnitee are irrelevant to the indemnitor's obligation to pay. Rather it is the terms of the indemnity agreement which govern the obligations of the parties." *Meloy*, 504 So.2d at 839; *see also Klutz v. New Orleans Pub. Facility Mgmt., Inc.*, 05-0327, p. 4 (La. App. 4 Cir. 12/21/05), 921 So.2d 1021, 1023 (observing that the language in the indemnity agreement dictates the parties' obligations).

In granting STG and Safeco's joint motion, the trial court, in its written reasons for judgment, observed:

- Section II-216 of the Tariff Agreement is clear in that Ports will be responsible for its own negligence and/or the negligence of its employees. Thus, in order to have a valid claim for defense and indemnification, Ports must produce evidence as to fault on behalf of STG and/or its employees.

- It is undisputed that Plaintiff [Mr. Riggio] was struck by a Ports' vehicle operated by Ports' employee, [Mr.] Bridges, further corroborated by [Mr.] Bridges' own deposition testimony.[10]

- Based on the facts and allegations of the Petition, it is alleged that bodily injury resulted only from the acts of Ports' employee within the course and scope of his employment.

- Ports has failed to submit evidence and factual support through testimony, affidavits, or expert reports showing any fault other than its own employee's negligence.

- Because Ports has failed to meet its burden, and Ports is responsible for its own fault and the fault of its employees under the Tariff Agreement, Ports' claim for defense and indemnification fails.

The trial court's ruling, which adopts STG and Safeco's argument,[11] is erroneous in three respects.

First, the jurisprudence has held that the allegations of the petition are irrelevant in construing an indemnity agreement; rather, an indemnity agreement

---

[10] In support of their joint motion, STG and Safeco attached, among other things, the deposition testimony of Mr. Bridges and Mr. Riggio. STG and Safeco emphasize that the deposition testimony supports the allegations in the petition that the collision was caused by Mr. Bridges and that Mr. Bridges was acting as Ports' employee when the collision occurred.

[11] STG and Safeco's argument is that because Ports is not owed contractual defense or indemnification for its own fault, Ports—to defeat STG and Safeco's supported summary judgment motion—was required to present competent summary judgment evidence through testimony, affidavits, or expert reports (opinions) proving the underlying collision happened in some way other than that described by its own employee, Mr. Bridges, in his deposition. Ports failed to do so. Absent proof on this essential element of Ports' claim, STG and Safeco contend they are entitled to summary judgment.

13

must be construed based upon its wording. *Meloy*, 504 So.2d at 839. Here, the trial court, in its reasons for judgment, cited the petition, observing that "[b]ased on the facts and allegations of the Petition, it is alleged that bodily injury resulted only from the acts of Ports' employee within the course and scope of his employment." Reliance on the allegations of the petition in construing an indemnification agreement is misplaced. The language of the indemnification agreement—here, the Tariff—is controlling.

Second, the trial court's ruling presupposes that an essential element of Ports' claim for indemnification is proof of fault on the indemnitor's (here, STG's) part. But, as Ports contends, the Tariff does not contain such a requirement; rather, the Tariff simply states that there is no indemnity for the indemnitee's (here, Ports') own negligence. The Tariff's terms, as Ports points out, are distinguishable from the terms of the indemnity agreement at issue in *Palmer v. General Health, Inc.*, 552 So.2d 750, 756 (La. App. 1st Cir. 1989).

In *Palmer*, the contractual indemnity agreement limited indemnity to when the claim was caused by the fault or neglect of the indemnitor. Here, the Tariff contains no such requirement of fault or neglect on the part of the indemnitor—here, STG—before an obligation to indemnify is triggered. *See also Treme v.*

14

*American Mut. Liab. Ins. Co.*, 260 So.2d 41, 44 (La. App. 3d Cir. 1972) (rejecting indemnitor's argument that the contractual indemnity clause in question "presupposes the existence of fault on the part of the [indemnitor]" because "the written agreement does not require a finding of fault on the part of the [indemnitor] as a prerequisite to indemnification"). Again, the Tariff contains no requirement that the indemnitor (here, STG) be at fault before the indemnity obligations are triggered.

Third, no judicial determination of Ports' fault, if any, for the underlying tort claim has been made; a trial on Mr. Riggio's underlying tort claim has not yet been held.[12] Although it was not premature for Ports to file its third-party demands before such a judicial determination was made, it was premature for the trial court to rule on those demands. *See Bennett*, 23-01358, pp. 8-9, 386 So.3d at 276. Accordingly, we reverse the trial court's decision granting STG and Safeco's joint summary judgment motion.[13]

---

[12] The trial of the underlying matter has been stayed pending the outcome of this appeal.

[13] Ports also contends that the trial court erred in granting summary judgment to STG and in dismissing Ports' claims against STG because if, as the trial court found, the ACE policies procured by STG did not provide insurance coverage to Ports, then STG breached its obligation to Ports under the Tariff to furnish insurance coverage with Ports as a named insured. And, STG would be liable to Ports for that breach. Given our reversal for other reasons of the summary judgment in STG's favor, we pretermit this issue.

3. *Insurance Law—ACE*

"Whether an insurance policy provides for, or precludes, coverage as a matter of law is an issue that can be resolved within the framework of a motion for summary judgment." *Certain Underwriters at Lloyd's of London v Duxworth Roofing and Sheetmetal, Inc*., 22-0821, p. 7 (La. App. 4 Cir. 7/18/23), 370 So.3d 1144, 1149 (internal quotations and citation omitted). In analyzing insurance policies, the following elementary legal principles apply:

• An insurance policy is a contract between the parties and should be construed by using the general rules of interpretation of contracts set forth in the Civil Code.

• The parties' intent as reflected by the words in the policy determine the extent of coverage. Such intent is to be determined in accordance with the general, ordinary, plain and popular meaning of the words used in the policy, unless the words have acquired a technical meaning. [La.] C.C. Art. 2047.

• An insurance policy should not be interpreted in an unreasonable or a strained manner so as to enlarge or to restrict its provisions beyond what is reasonably contemplated by its terms or so as to achieve an absurd conclusion.

• Absent a conflict with statutory provisions or public policy, insurers, like other individuals, are entitled to limit their liability and to impose and to enforce reasonable conditions upon the policy obligations they contractually assume.

• [I]f the policy wording at issue is clear and unambiguously expresses the parties' intent, the insurance contract must be enforced as written. LSA-C.C. Art. 2046 (providing that when the words of a contract are

16

clear, no further interpretation may be made to determine the parties' intent).

• When the language of an insurance policy is clear, courts lack the authority to change or alter its terms under the guise of interpretation. The determination of whether a contract is clear or ambiguous is a question of law.

*Moon v. Safeway Ins. Co. of Louisiana*, 22-0455, pp. 5-6 (La. App. 4 Cir. 12/6/22), 353 So.3d 352, 356 (quoting *Louisiana Ins. Guar. Ass'n v. Interstate Fire & Cas. Co.*, 93-0911 (La. 1/14/94), 630 So.2d 759, 763-64)) (citations and footnotes omitted).

The party seeking to establish coverage under an insurance policy has the burden of proving every essential fact as well as that the party's claim is within the policy's coverage. *Maldonado*, 13-0756, p. 11 (La. App. 1 Cir. 3/24/14), 146 So.3d 210, 218 (observing that "[a]s the party claiming coverage under the policy issued by Twin City, KMTC-JV has the burden to prove coverage" as well as the burden of showing that it fell "under the additional insured endorsement to prove entitlement to coverage"). "If a petition does not allege facts within the scope of coverage, an insurer is not legally required to defend a suit against its insured." *Maldonado*, 13-0756, p. 12, 146 So.3d at 219.

To resolve whether an insurer has a duty to defend, a court must consider not only the policy language, but also the allegations of the plaintiff's petition. This is known as the "eight-corners rule"—the rule that "an insurer must look to the 'four corners' of the plaintiff's petition and the 'four corners' of its policy to determine whether it owes that duty [to defend]." *Maldonado*, 13-0756, p. 11, 146 So.3d at 218.

In its summary judgment motion, ACE raised two issues. First, it contended that the Tariff's insurance provision was void and unenforceable pursuant to the LAIA. Second, it contended that, even if the insurance provision was valid under the LAIA, Ports did not qualify as an additional insured under the two policies ACE issued to STG's predecessor, XPO:

(i)     An excess automobile policy (Policy No. XSA H252871130); and

(ii)    A commercial general liability ("CGL") policy (Policy No. HDOG71449129) (collectively the "Policies").[14]

---

[14] ACE's two insurance policies were delivered in Connecticut, presenting a potential conflicts of law issue. But, as ACE acknowledges, the law of the two states involved—Louisiana and Connecticut—is the same on the issues pertinent to ACE's motion. Thus, the conflicts of law issue need not be resolved in order to grant ACE's summary judgment motion. *See Maldonado v. Kiewit Louisiana Co.*, p. 10 (La. App. 1 Cir. 3/24/14), 146 So.3d 210, 217.

Opposing ACE's summary judgment motion, Ports contended that there were genuine issues of material fact regarding whether the Policies provide coverage to Ports as an additional insured.

Granting ACE's summary judgment motion, the trial court, in its written reasons for judgment, observed:

> Based on the clear and unambiguous language of the policies, the Court finds Ports does not qualify as an additional insured under either [of ACE's] polic[ies]. The applicable endorsements provide that an organization is only an "insured" for "bodily injury" or "property damage" resulting from acts or omissions of XPO [now STG] or its employees, or caused, in whole or in part, by XPO's acts or omissions, or acts or omissions of those acting on XPO's behalf.

For these reasons, the trial court found that Ports failed to carry it burden of proof.

On appeal, Ports repeats its argument that there are genuine issues of material fact regarding whether Ports is provided insurance coverage as an additional insured. Ports emphasizes that ACE acknowledged Endorsement No. 1 of the CGL policy is potentially triggered. Ports contends that, when viewed as a whole, ambiguities exist in the CGL policy between the coverage form and Endorsement No. 1.[15] Ports contends that, when interpreted in Ports' favor as the

---

[15] Ports' argument focus on the CGL policy. ACE points out that Ports did not oppose ACE's summary judgment motion with respect to the Auto policy and that Ports does not reference the Auto policy or make any argument that it is entitled to coverage under it in its appeal. But, the

non-moving party, these ambiguities create a genuine issue of material fact as to whether Ports qualified as an additional insured under ACE's CGL policy.[16]

ACE counters that Ports is not a named insured under the Policies. Although ACE acknowledges that the Policies contain additional insured endorsements that are potentially triggered, the Policies provide additional insured coverage only when the following two conditions both are met:

(i)     The named insured agrees to include the organization as an additional insured under a written contract executed before the loss; and

(ii)    The organization is an insured only for "bodily injury" or "property damage" resulting from or caused by the acts or omissions of the named

---

trial court's decision was based on a consideration of both Policies; the trial court, in its reasons for judgment, observed that "[b]ased on the clear and unambiguous language of the policies, the Court finds Ports does not qualify as an additional insured under either [of ACE's] polic[ies]." Given Ports only addresses the CGL policy in its appellate briefs, we find, as ACE contends, that Ports waived any argument regarding the Auto policy; only the CGL policy, which was briefed, is before us. *See Burgess v. Shi Gang Zheng*, 17-0665, n.4 (La. App. 4 Cir. 10/10/18), 257 So.3d 764, 769 (quoting *McMaster v. Progressive Sec. Ins. Co.*, 14-0155, pp. 6-7 (La. App. 4 Cir. 10/29/14), 152 So.3d 979, 983, for the proposition that it is "'well settled that if an appellant identifies an assignment of error or an issue presented for review, but fails to brief that point with citations to the record and support in the law, that issue or assignment is deemed waived'").

[16] Endorsement No. 1 of the CGL policy provides, in part, as follows:

**A. Section II – Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury," [or] "property damage" . . . caused, in whole or in part, by your acts or omissions or the acts or omissions of those acting on your behalf:
1. In the performance of your ongoing operations; or
2. In connection with your premises owned by or rented to you.

20

insured, its employees or agents, or those acting on the named insured's behalf.

ACE contends that, assuming the first condition is met, there is no allegation that any "bodily injury" or "property damage" resulted from or caused by the acts or omissions of the named insured—here, STG's predecessor, XPO; its employees or agents; or anyone acting on XPO's behalf. To the contrary, Mr. Riggio alleges in the petition that Ports and its employee, Mr. Bridges, caused Mr. Riggio's injuries, which is consistent with Mr. Bridges' deposition testimony. Thus, ACE contends that Ports cannot meet the second condition.

In support of its position, ACE cites a trio of cases interpreting similarly worded additional insured provisions.[17] ACE contends that those cases stand for the proposition that when, as here, there is no alleged liability on the part of the named insured (here, STG's predecessor, XPO), additional insured coverage is not owed; no coverage is provided for the additional insured's sole negligence.[18] Ports,

---

[17] *Maldonado, supra*; *Houston Specialty Ins. Co. v. Chesapeake Operating, LLC*, No. 5:15-CV-47, 2017 WL 4322828, at *5 (W.D. La. Sept. 27, 2017) (*unpub.*); and *Holzenthal v. Sewerage & Water Bd. of New Orleans*, 06-0796 (La. App. 4 Cir. 1/10/07), 950 So.2d 55.

[18] ACE contends that there are two independent grounds to affirm the trial court's ruling dismissing Ports' claims against ACE: 1) the insurance provision contained in Section II-210 relied on by Ports is void due to the application of the LAIA; and 2) even if insurance provision of the Tariff is valid, Ports does not qualify as an insured under the clear and unambiguous

21

in its reply brief, argues that those cases cited by ACE are inapposite and do not address the situation presented here—a party that is contractually obligated to provide insurance coverage to another party as a named insured. Ports' argument is unpersuasive.

Ports' argument focuses on the first condition—the named insured agrees to include the organization as an additional insured under a written contract executed before the loss. But, the trial court, agreeing with ACE's argument, presumed the first condition was met and focused on the second one. As ACE contends, the trial court found that, assuming Ports is an insured, it would only be an insured for "bodily injury" or "property damage" resulting from or caused by the acts or omissions of the named insured, its employees or agents, or those acting on the named insured's behalf. The petition is devoid of any allegation that the underlying collision was caused by any acts or omissions of the named insured. Thus, Ports cannot establish the second condition. Both conditions must be met to establish coverage as an additional insured. The trial court correctly found that Ports failed to meet its burden of proving that it is an additional insured.

provisions of the ACE Policies. Because we find the second reason persuasive, we do not address the first one.

Ports further contends that ACE's argument, which the trial court adopted, ignores another portion of Endorsement No. 1 to the CGL policy, which states:

> If coverage provided to the additional insured is required by a contract or agreement, the insurance afforded to such additional insured will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

The gist of Ports' argument is that this additional limiting language in Endorsement No. 1 creates additional insured coverage.[19] But, as ACE points out, this is a limiting provision—it restricts coverage provided to the additional insured under Endorsement No. 1 by stating it will not be broader than that which is required by the contract or agreement. Stated otherwise, this limiting provision expresses that for those qualifying as an additional insured under the prior paragraph of Endorsement No. 1, coverage will not be broader than the contract at

---

[19] Ports' argument regarding this provision is that the Tariff required STG to provide insurance coverage to Ports as a named insured. Thus, the coverage provided to Ports can be no broader than that of a named insured. Ports contends that, interpreting this limiting provision in the light most favorable to Ports as the non-moving party, if Ports is considered a named insured under the policy, as the Tariff required Ports to be so named, then because the policy states that "the words 'you' and 'your' refer to the Named Insured shown in the Declarations and any other person or organization qualifying as a Named Insured under this policy," the distinction ACE emphasizes—that a party is only an additional insured "with respect to liability for 'bodily injury' … caused, in whole or in part, by your acts or omissions or the acts or omissions of those acting on your behalf," with ACE arguing that "you" and "your" refers to STG's acts or omissions only—vanishes because "you" and "your" would then also refer to Ports' acts or omissions.

23

issue. Moreover, this limiting provision neither defines nor amends "Who is an Insured." Nor does this limiting provision negate the language of the prior paragraph of Endorsement No. 1, imposing the two conditions to qualify as an additional insured. Given the allegations of the petition, Ports faces no liability for "bodily injury" or "property damage" caused by the named insured, XPO, STG's predecessor; XPO's employees; or those acting on its behalf.

Based on the unambiguous policy language coupled with the allegations of the petition, we conclude that Ports failed to meet its burden of proving it is an additional insured and that ACE has no duty to defend or to indemnify Ports. Accordingly, we affirm the trial court's decision granting ACE's summary judgment motion.

## DECREE

For the foregoing reasons, the trial court's decision granting the joint summary judgment motion filed by STG and Safeco is reversed; the trial court's decision granting ACE's summary judgment motion is affirmed; and this case is remanded for further proceedings.

**AFFIRMED IN PART; REVERSED IN PART; AND REMANDED**